**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION**

| | | |
|---|---|---|
| **DAVID FLASH;** | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | **PE:26-CV-00004-DC-DF** |
| | § | |
| **JEFF DAVIS COUNTY, et al.;** | § | |
| *Defendants.* | § | |
| | § | |

## <u>U.S. MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

Before the Court is Defendant Curtis Evans's Motion to Dismiss. (Doc. 17). After due consideration, the undersigned recommends the Motion be granted in part and denied in part.

### BACKGROUND

Plaintiff David Flash brings this action against Defendant Jeff Davis County ("County") and multiple County officials, alleging violations of his constitutional rights. (Doc. 1). Flash is an independent journalist who covers regional events and public affairs in West Texas. *Id.* at 14. In September 2023, Flash's news outlet, the Big Bend Times, published investigative news stories centered around the conduct of multiple County officials. *Id.* The stories accused the officials of misusing county resources and questionable law enforcement practices. *Id.*

Flash faced backlash after the stories were published. *Id.* at 15. Defendant Lisa Dennison, an employee for the County Attorney's Office, confronted him and told him he was under investigation. *Id.* A few months later, an anonymous poster released Flash's mugshots—which were private under a Texas Government Code Chapter 411

non-disclosure order—and characterized him as "not a trusted media source." *Id.* He later discovered Dennison had been the one who had obtained his mugshots. *Id.*

Defendant Glen Eisen, Dennison's supervisor, was apparently aware that Dennison had misappropriated Flash's mugshots but did not take disciplinary action. *Id.* at 16. As Flash was beginning to face backlash in Fall 2023, Defendant King Merritt filed a police report detailing an incident with Flash at the County Attorney's Office between Eisen and Flash. *Id.* at 16; (Doc. 11 at 16). Eisen had asked Merritt to arrest Flash for "causing problems at the Jeff Davis County Attorney's Office." (Doc. 11 at 16). Merritt attempted to detain Flash, but Flash left before he could do so and no further action was taken. *Id.* at 16–17.

On October 20, 2023, Flash returned to the County Courthouse. (Doc. 1 at 16–17). Defendant Mary Ann Luedecke, a justice of the peace for the County, attempted to detain him after he photographed a sign outside her office. *Id.* Two days later, Luedecke sent out an alert to regional law enforcement agencies that labeled Flash as a "First Amendment auditor." *Id.* at 17. Luedecke and Eisen also called the District Attorney's Office to warn them that a "First Amendment auditor" was "on the loose." *Id.*

Although no charges had been filed against Flash by this point, Luedecke issued a mock-warrant notice to law enforcement against him at his home address. *Id.* at 18. Luedecke claimed this was part of a training exercise for officials practicing with new software. *Id.* Luedecke also filed a "failure to appear" notice against Flash that resulted in Flash's driver's license renewal being blocked. *Id.* Flash was the target of seven

separate criminal investigations during this time, none of which resulted in criminal charges. *Id.* at 19.

At this point, Flash and Defendants did not have any affinity with each other and Defendants began strategizing how they could keep Flash out of their affairs. *Id.* They discussed playing Disney music during public meetings to prevent Flash—through copyright restrictions—from monetizing his recordings. *Id.* at 17. Eisen authored a memorandum to the County Commissioners Court proposing an ordinance that would criminalize photographing any county employee without their consent but allow employees to grant consent to favorable media outlets. *Id.* at 19–20.

On April 23, 2024, Flash returned once more to the County Courthouse to record a public county commissioners court meeting. *Id.* at 20. This time, Defendant Curtis Evans—a county judge—ordered Flash physically removed for covering the meeting. *Id.* As he was being escorted out, one of the County deputies told him to "get a lawyer and sue." *Id.* The next day, Evans issued a written order that banned Flash from being within 300 feet of any County building or official, under penalty of arrest and jail time. *Id.* Flash did not receive notice of the ban or the opportunity to be heard, and it was unclear what legal authority, if any, Evans had been acting under in issuing the ban. *Id.* Criminal charges had also been filed against Flash for harassment and terrorism. *Id.* at 22.

Two days later, Flash was arrested on a warrant issued by the County and placed in the Van Horn Jail for sixteen hours before posting bond. *Id.* at 21. After he returned to his home in Fort Davis, he was stopped by Merritt near his house and told that he

would be arrested if he approached the County Courthouse, pursuant to Judge Evans's trespass order. *Id.* Flash filed a habeas motion challenging the order as a violation of his First, Fifth, and Fourteenth Amendment rights. *Id.* On June 10, 2025, a court struck down the ban, finding it violated Flash's constitutional rights and was issued without legal authority. *Id.* at 21.

With the order now lifted, Flash returned to the County Courthouse on June 27 to photograph a budget meeting. *Id.* at 22. There were no written rules that prohibited recording or photography, but Flash was asked to move his camera to the back of the room—a request he complied with. *Id.* Defendant Victor Lopez, a county sheriff, then approached Flash and told him his photography was interfering with his ability to listen to the meeting. *Id.* Defendant Adriana Ruiloba, a county deputy, also approached Flash and told him to back off and not come in her personal space. *Id.* Flash left the room and continued recording the meeting from outside. *Id.*

Upon reentering the room to photograph Ruiloba, Flash was grabbed, handcuffed, and forcibly removed by Ruiloba and Joseph Giesbrecht, a fellow a police officer. *Id.* at 23. Flash was nonresistant throughout the duration of his removal, and he made this clear to the officers. *Id.* ("Flash sa[id] 'Stop' and 'I'm not resisting' as Defendants Ruiloba and Giesbrecht used physical force against him."). Flash was questioned for 30 minutes and cited for disorderly conduct under Texas Penal Code § 42.01. *Id.* The citation did not identify which of the eleven subsections Flash had violated. *Id.* The same day he was arrested, Flash went to an urgent care center for injuries stemming from Ruiloba and Giesbrecht's force. *Id.* at 24. Flash's medical records

4

documented bruising and wrist abrasions on his arms, pain in his upper back and chest, and an elevated heart rate. *Id.*

After his arrest, Defendants made various statements to the media about Flash and his arrest. Evans called him "crazy" and "not suitable for public settings" and brought up the possibility of additional criminal charges. *Id.* at 25. Evans also endorsed an anonymous anti-David Flash website called BigBendTimes.org (unaffiliated with Flash's news outlet, Big Bend Times). *Id.* Evans and Lopez both conducted an in-person interview with BigBendTimes.org and released body cam footage of Flash's arrest to the website. *Id.* at 25–26. All criminal charges against Flash were eventually dropped. *Id.* at 24. His disorderly conduct charge was dropped due to insufficient evidence. *Id.* The harassment charge filed by Defendant Luedecke was dismissed on August 10, along with an outstanding traffic citation against Flash. *Id.*

On January 18, 2026, Flash filed this action, alleging that the County and many of its officials, including Evans, violated his constitutional rights. (Doc. 1). Evans filed a Motion to Dismiss. (Doc. 17). This matter was fully briefed and is ripe for adjudication. (Docs. 24, 45).

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate if a complaint offers merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678), *cert. denied*, 572 U.S. 1087 (2014). When reviewing a 12(b)(6) motion, the court accepts all facts as true and construes them in the light most favorable to plaintiff. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

**DISCUSSION**

Flash brings First Amendment, Fourth Amendment, civil rights conspiracy, state law defamation, and state law abuse of process claims against Evans. Evans moves to dismiss all claims on various grounds, including judicial, legislative, and qualified immunity. The undersigned finds that Evans is not entitled to judicial, legislative, or qualified immunity at this stage. Evans's Motion should be denied as to Flash's Fourth Amendment false arrest, First Amendment retaliation, civil rights conspiracy, and state law claims but granted as to his malicious prosecution and official capacity claims.

## I.  Judicial Immunity

Evans initially asserted judicial immunity in his Motion before conceding in his Reply that it would not apply under *Diaz v. Cantu*. 123 F.4th 736 (5th Cir. 2024); (Doc. 45 at 2) ("[T]he holding in *Cantu* is likely controlling as to judicial immunity."). In *Diaz*, the Fifth Circuit recognized that a judge presiding over a Texas county commissioners court meeting was not acting in a judicial capacity when he held the plaintiff in contempt.

6

123 F.4th at 747. Evans, who was also presiding over the County Commissioners Court when he directed Flash's arrest, is likewise not entitled to judicial immunity. (Doc. 1 at 22). Evans's Motion should therefore be denied as to judicial immunity.

## II.     Legislative Immunity

Evans also asserts legislative immunity for Flash's claims arising out of the June 27 arrest. The undersigned concludes he is not entitled to legislative immunity and Evans's Motion should be denied as to this basis.

Not all actions taken by an official with legislative duties are protected by absolute immunity, only those that are functionally legislative. *Hughes v. Tarrant County*, 948 F.2d 918, 920 (5th Cir. 1991). "Whether an act is legislative turns on the nature of the act . . . ." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). Legislative acts involve the "establishment of a general policy." *Hughes*, 948 F.2d at 921 (quoting *Cutting v. Muzzey*, 724 F.2d 259, (1st Cir. 1984)). Conversely, administrative acts—even when taken by a legislative body—are not entitled to legislative immunity. *Id.* Whereas legislative acts involve establishment of a general policy, administrative acts "single out specific individuals and affect them differently than others . . . ." *Id.*

Evans argues that he was engaged in a legislative activity when Flash was arrested because the arrest took place at a County Commissioners court budgetary meeting. (Doc. 17 at 5–6). "A Texas commissioners' court judge wears many hats." *Biggers v. Massingill*, No. 4:23-CV-00359-P, 2025 WL 1569404, at *2 (N.D. Tex. June 3, 2025), *aff'd*, 2025 WL 429974 (5th Cir. Feb. 7, 2025). The judge acts primarily in an administrative capacity when presiding over the county commissioners court because

7

"the commissioners court is an administrative body . . . ." *Diaz*, 123 F.4th at 747; *see Daves v. Dallas County*, 22 F.4th 522, 537 (5th Cir. 2022) (en banc) (classifying the commissioners court as the "county's chief administrative body").

Here, Evans is not entitled to legislative immunity because he was presiding over an administrative body. *Diaz*, 123 F.4th at 747. Moreover, the mere fact that a claim arises out of the allocation of county money does not entitle the defendant official to legislative immunity. *Hughes*, 948 F.2d at 921 ("Even though the decision concerned the allocation of county monies, it was not based on legislative facts . . . ."). Flash does not complain of Evans's conduct in relation to voting on the budget, he complains of him singling him out for removal and arrest. (Doc. 1 at 30) ("Evans . . . directed Flash's arrest . . . .").

More fundamentally, there is nothing from Flash's Complaint to indicate that the June 27 meeting was even a legislative session. Flash states it was a "public Commissioner's Court budget meeting[,]" but the Court cannot infer the meeting was legislative just because it involved the budget. (Doc. 1 at 22). Meetings involving the budget are often purely administrative. In *Diaz*, the Fifth Circuit reasoned that the commissioners court was an administrative body on the basis that it "is tasked with managing 'county business,' setting budgets and the like." 123 F.4th at 747 (citing TEX. CONST. art. V, § 18(b)); *see also id.* ("The commissioner's court, at least at this meeting, was a court in name only, and English Cantu *was acting as an administrative official*, not a judge, when presiding over it." (emphasis added)). Thus, the undersigned—without

more facts—cannot say that Evans is entitled to legislative immunity at this stage. Evans's Motion should therefore be denied as to legislative immunity.

## III.    Entitlement to Qualified Immunity

Evans asserts qualified immunity as well. Qualified immunity is a defense to individual capacity liability for "government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established constitutional rights." *Diaz*, 123 F.4th at 747 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). If a defendant successfully raises qualified immunity, "[t]he plaintiff 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm . . . alleged and that defeat a qualified immunity defense with equal specificity." *Id.* (quoting *Lincoln v. Barnes*, 855 F.3d 297, 300–01 (5th Cir. 2017)).

Qualified immunity works under a burden shifting framework. *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019). The defendant official bears the initial burden to establish their entitlement to the defense. *Castelan v. Villarreal*, No. 5:23-CV-1394-JKP-RBF, 2025 WL 424538, at *20 (W.D. Tex. Feb. 6, 2025) ("[M]ere invocation [of qualified immunity] is not enough."); *Barker v. Norman*, 651 F.2d 1107, 1120 (5th Cir. 1981) ("The immunities of state officials that we have recognized for purposes of [§] 1983 are the equivalents of those we have recognized at common law, and the burden is on the official claiming immunity to demonstrate his entitlement." (internal citations omitted) (quoting *Dennis v. Sparks*, 449 U.S. 24, 29 (1980))).

To satisfy this burden, the defendant official must demonstrate their conduct was within the scope of their discretionary authority. *Cherry Knoll*, 922 F.3d at 318; *Sweetin v.*

9

*Texas City*, 48 F.4th 387, 392 (5th Cir. 2022) ("To even get into the qualified-immunity framework, the government official must 'satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority.'" (quoting *Cherry Knoll*, 922 F.3d at 318)). An official acts pursuant to discretionary authority when they perform non-ministerial acts within the scope of their official responsibilities. *Cherry Knoll*, 922 F.3d at 318. Non-ministerial acts are those that involve personal deliberation and judgment, while ministerial acts are those that require obedience or the performance of a duty to which the actor had no choice but to perform. *Anders v. Rumfield*, No. 25-40387, 2026 WL 625638, at *2 (5th Cir. Mar. 5, 2026).

Even if the defendant demonstrates their actions were non-ministerial, they must also show they were within the scope of their official responsibilities. *Diaz*, 123 F.4th at 748–49; *see Barker*, 651 F.2d at 1121 n.18 ("It should be clear from our prior case law that an official's actions may be so far removed from the ordinary course of his duties, so outside even his discretionary authority to act, that the official cannot establish his entitlement to claim immunity in the first instance . . . ."). To determine whether an official was acting within the scope of their official duties, courts look primarily at state law. *Anders*, 2026 WL 625638, at *2 (citing *Sweetin*, 48 F.4th at 392).

Here, Evans cites Texas Penal Code § 42.05 as his authority for ordering Flash's arrest. (Doc. 17 at 7). But § 42.05 criminalizes disorderly conduct; it does not provide Evans with discretionary authority to make arrests. If raising qualified immunity was as easy as pointing to a government job and a penal statute; mailmen, teachers, and even law clerks could be shieled by qualified immunity when making arrests.

*Malina v. Gonzalez* is illustrative here. 994 F.2d 1121 (5th Cir. 1993). In *Malina*, Judge Douglas Gonzalez was denied qualified immunity where he had—in an incident of road rage—used his status as a judge to pull the offending plaintiff over and detain him. *Id.* at 1126. The Fifth Circuit found that:

> Judge Gonzalez is not entitled to make a claim of qualified immunity for he was not a police officer authorized to stop Malina. Judge Gonzalez is no different than any person who purchases a red light and stops people on the interstate.

*Id.* Just as the judge in *Malina* was no different than any person who stops people on the interstate, the possibility remains that Evans is no different than any average person who would make an arrest. The danger in allowing those who hold the title of "judge" to wield such power has been "apparent since before the Constitution." *Id.* at 1129 (Garza, J., concurring). "Were the power of judging joined . . . to the executive power, the judge might behave with all the violence of an oppressor." THE FEDERALIST No. 47, at 303 (James Madison) (Clinton Rossiter ed., 1961).

Thankfully, more is required before qualified immunity can be raised. To meet his burden, Evans would have had to point to specific authority vesting county commissioners court judges with discretion to make arrests during county commissioners court meetings. *Sweetin*, 48 F.4th at 392. Merely stating that he was acting "within the course and scope of his official government duties" as a county commissioners court judge is insufficient. (Doc. 17 at 6). "[T]here must be more than a bald assertion by the defendant that the complained-of actions were undertaken pursuant to the performance of his duties and within the scope of his discretionary

11

authority; there must be a showing . . . that would compel that conclusion." *Barker*, 651 F.2d at 1124–25. In *Diaz*, for example, the Fifth Circuit found a county commissioners court judge did not establish his entitlement to qualified immunity under similar facts. 123 F.4th at 748–49. The judge failed to meet his burden because he did not point to any authority giving him discretion to hold people in contempt during a county commissioners court meeting. *Id.* Evans fails in the same respect and is therefore not entitled to qualified immunity at this stage.

### IV.    Fourth Amendment

Flash brings Fourth Amendment claims against Evans for false arrest and malicious prosecution. Evans moves to dismiss both for failure to state a claim. The undersigned finds Evans's Motion should be denied as to Flash's false arrest claim but granted as to his malicious prosecution claim.

### A. False Arrest

To state a claim for false arrest, a plaintiff must show that the defendant could not have reasonably believed they had probable cause to arrest the plaintiff for any crime. *Green v. Thomas*, 129 F.4th 877, 886 (5th Cir. 2025). "Probable cause is established by facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed . . . an offense." *Id.* (internal quotations omitted) (quoting *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019)). Accepting Flash's allegations as true, no reasonable person in Evans's shoes could have believed there was probable cause to arrest Flash.

Flash alleges that he was arrested after photographing a commissioners court meeting that was open to the public. (Doc. 1 at 22). He pleads that there were no rules prohibiting recording or photography, he complied with a request to move his camera when asked, and that he was not disrupting the meeting in any way. *Id.* Flash briefly left the room but was arrested "at the direction of Defendant Evans" upon returning to photograph Defendant Ruiloba.[1] *Id.* at 23.

Flash alleges he was arrested after photographing a county commissioners court meeting that was open to the public. (Doc. 1 at 22). Flash briefly left the meeting but was arrested upon returning to photograph Defendant Ruiloba. *Id.* at 23. He pleads that there were no rules prohibiting recording or photography; he complied with a request to move his camera when asked; and that he was not disrupting the meeting in any way. *Id.* at 22.

Flash was arrested and cited for disorderly conduct under Texas Penal Code § 42.01. (Doc. 1 at 23). Texas Penal Code § 42.01 proscribes a laundry list of conduct; Flash was not notified how his conduct fell under the statute. *Id.* Under § 42.01, a person commits an offense if he:

> (1) uses abusive, indecent, profane, or vulgar language in a public place, and the language by its very utterance tends to incite an immediate breach of the peace;
> (2) makes an offensive gesture or display in a public place, and the gesture or display tends to incite an immediate breach of the peace;

---

1. Although Evans did not handcuff Flash himself, he had sufficient personal involvement in the alleged constitutional deprivation. All Flash must show is "some causal connection between an act of the official and the alleged violation." *Henzel v. Gerstein*, 608 F.2d 654, 658 (5th Cir. 1979). Evans directing the unconstitutional arrest is sufficient. *See Heilrayne v. Univ. of Tex. at Austin*, No. 1:25-CV-640-DAE, 2026 WL 630966, at *9 (W.D. Tex. Jan. 27, 2026).

(3) creates, by chemical means, a noxious and unreasonable odor in a public place;

(4) abuses or threatens a person in a public place in an obviously offensive manner;

(5) makes unreasonable noise in a public place other than a sport shooting range, as defined by Section 250.001, Local Government Code, or in or near a private residence that he has no right to occupy;

(6) fights with another in a public place;

(7) discharges a firearm in a public place other than a public road or a sport shooting range, as defined by Section 250.001, Local Government Code;

(8) displays a firearm or other deadly weapon in a public place in a manner calculated to alarm;

(9) discharges a firearm on or across a public road;

(10) exposes his anus or genitals in a public place and is reckless about whether another may be present who will be offended or alarmed by his act; or

(11) for a lewd or unlawful purpose enters on the property of another and looked into a dwelling on the property through any window or other opening in the dwelling.

Nothing from Flash's Complaint indicates probable cause existed to arrest him for any of these acts. (Doc. 1). Taking his allegations as true, he was not threatening or fighting anyone, and he certainly was not exposing his genitals in a public place. Flash has therefore alleged sufficient facts to show a lack of probable cause at this stage.

Should this Court find that Evans is entitled to qualified immunity, Flash also makes out a violation of a clearly established right. "[T]he right to be free from arrest absent lawful authority is clearly established." *Diaz v. Cantu*, 715 F. Supp. 3d 979, 985 (W.D. Tex. 2024) (citing *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)), *aff'd in part and rev'd in part on other grounds*, 123 F.4th 736. Moreover, there is robust authority giving judges fair notice that it is unconstitutional to wield their title outside of judicial proceedings to make arrests. *Id.*; *Malina*, 994 F.2d at 1126 (holding unlawful seizure occurred because state judge pulled plaintiff over on highway without lawful

14

authority); *Brewer v. Blackwell*, 692 F.2d 387, 397 (5th Cir. 1982) (holding unlawful arrest occurred because justice of the peace had no authority to arrest plaintiff). Flash therefore states a Fourth Amendment false arrest claim and would overcome qualified immunity should it apply.

### B. Malicious Prosecution

To state a malicious prosecution claim, the plaintiff must plead the threshold element of there being an unlawful seizure as well as: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages." *Davis v. Warren*, 173 F.4th 566, 572 (5th Cir. 2026). Authority illuminating the contours of these elements is sparse.

In 2002, the Fifth Circuit conceded that "[i]t would be an understatement to say that this [C]ircuit's caselaw regarding so-called 'Fourth Amendment malicious prosecution' claims under § 1983 is both confused and confusing." *Gordy v. Burns*, 294 F.3d 722, 725 (5th Cir. 2002). One year later, the Fifth Circuit held that a freestanding constitutional claim for malicious prosecution was not cognizable under § 1983. *See, e.g., Castellano v. Fragozo*, 352 F.3d 939, 953–54 (5th Cir. 2003). Then in 2022, the Supreme Court formally recognized the claim as cognizable under the Fourth Amendment in *Thompson v. Clark*, 596 U.S. 36 (2022). Fourth Amendment malicious prosecution is now

15

officially back from the grave and many uncertainties remain.[2] *See Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023).

The Fifth Circuit has said "the elements of the state-law tort of malicious prosecution and the elements of the constitutional tort of 'Fourth Amendment malicious prosecution' are coextensive[,]" meaning they are equivalent. *Id.* (quoting *Gordy*, 294 F.3d at 725). But it has also said "a Fourth Amendment malicious prosecution claim is essentially a federal constitutional claim, and federal courts are bound neither by state courts' interpretation of those elements nor (we think) by procedural requirements like the burden-shifting framework" imposed by state courts. *Gordy*, 294 F.3d at 727. The undersigned takes this to mean that while the elements of state and federal malicious prosecution claims are the same, state courts' interpretation of these elements is not authoritative.

Consequently, there is not much out there establishing the dimensions of a federal malicious prosecution claim in this Circuit. "In the typical case, an officer maliciously causes a criminal proceeding to be brought by providing false or misleading information to a prosecuting attorney or grand jury." *Gordy*, 294 F.3d at 728. This is not the typical case. Flash's malicious prosecution claim against Ruiloba is premised on the same facts as his false arrest claim—that Ruiloba arrested him. (Doc. 24 at 11). Flash was arrested and given a citation for the arrest, but he was not seized pursuant to the prosecution itself. (Doc. 1 at 23–24). This is fatal to Flash's malicious

---

2. Even before this, the Fifth Circuit had gone back and forth on recognizing malicious prosecution. *See Brummett v. Camble*, 946 F.2d 1178, 1180 n.2 (5th Cir. 1991). The Fifth Circuit is not alone, as "[m]ysteriously, other circuit courts seem also to have flip-flopped on the constitutional tort status of malicious prosecution." *Id.*

prosecution claim,[3] as the prosecution itself must be the source of an unconstitutional seizure. *See Thompson*, 596 U.S. at 43 n.2 ("[T]he plaintiff also has to prove that *the malicious prosecution* resulted in a seizure of the plaintiff." (citing *Manuel v. Joliet*, 580 U.S. 357, 365–66 (2017))).

Flash was arrested and therefore seized here. (Doc. 24 at 11). But a seizure incident to a warrantless arrest before the initiation of criminal charges and a seizure made after the initiation of criminal charges—a pre-trial detention, for example—are distinct under the Fourth Amendment. *See Thompson*, 596 U.S. at 43 n.2. In *Manuel*, for example, the Supreme Court distinguished a plaintiff's Fourth Amendment claims "for his (pre-legal-process) arrest" and "his (post-legal-process) pretrial detention." 580 U.S. at 365–66.

The former, a pre-legal-process arrest, would not support a claim for malicious prosecution because the prosecution itself has yet to begin when the seizure occurs. *Thompson*, 596 U.S. at 42 (defining "a Fourth Amendment claim under § 1983 for malicious prosecution" as "a claim for unreasonable seizure *pursuant to legal process*" (emphasis added)); *see Winfrey v. Rogers*, 901 F.3d 483, (5th Cir. 2018) (construing plaintiff's claim as being for "malicious prosecution, because [plaintiff] was arrested through the wrongful institution of legal process: an arrest pursuant to a warrant"). The

---

3. Although Evans does not point to this deficiency in arguing Flash failed to state a claim, "no plaintiff is exempt from [their] obligation to 'allege sufficient facts to state all the elements of [their] claim.'" *Puente v. Ridge*, 324 F. App'x 423, 428 (5th Cir. 2009) (quoting *Mitchell v. Crescent River Ports Pilots Ass'n*, 265 F. App'x 363, 370 (5th Cir. 2008)). Moreover, the "court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 111 (1991); *see Bernacchi v. First Chi. Ins. Co.*, 52 F.4th 324, 328 (7th Cir. 2022). Under the governing law applicable here, Flash cannot state a claim for relief.

First Circuit has been explicit on this point, holding that if "a person is arrested without a warrant and before the issuance of any legal process, that arrest does not form part of a Fourth Amendment seizure upon which a section 1983 claim malicious prosecution claim may be premised." *Harrington v. City of Nashua*, 610 F.3d 24, 32 (1st Cir. 2010). The Tenth Circuit has as well, holding that where "[t]he Fourth Amendment in the context of a malicious prosecution claim deals with *judicial determinations* of probable cause, either at the warrant application stage or during a *Gerstein* hearing following a warrantless arrest." *Wilkins v. DeReyes*, 528 F.3d 790, 802 (10th Cir. 2008); *see Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1994) (holding that plaintiff's arrest "cannot serve as the predicate deprivation of liberty because it occurred prior to his arraignment and without a warrant, and therefore was not 'pursuant to legal process'").

Here, Flash was seized pursuant to a pre-legal-process arrest. (Doc. 1 at 23). There was no warrant and Flash was not seized after his arrest. (Doc. 1). The order of events—Flash being arrested, cited, and then released without any limitations on his liberty from the citation, does not demonstrate that "the malicious prosecution resulted in a seizure of the plaintiff." *Thompson*, 596 U.S. at 43 n.2; *Johnson v. Crook*, No. W-11-CA-00212, 2012 WL 12871138, at *3 (W.D. Tex. Mar. 21, 2012) ("[T]o the extent that the malicious prosecution claim is based on the allegedly unconstitutional arrests, it is both redundant and misleading, as it is not truly a claim for malicious prosecution.").

Furthermore, there is no indication that the criminal charges themselves restrained Flash's liberty. In *Britton v. Maloney*, for example, the First Circuit found that there was no seizure because "[a]bsent any evidence that [the plaintiff] was arrested,

18

detained, restricted in travel, or otherwise subject to a deprivation of his liberty before the charges against him were dismissed, the fact that he was given a date to appear in court is insufficient to establish a seizure within the meaning of the Fourth Amendment." 196 F.3d 24, 28–29 (1st Cir. 1999). Similarly, nothing in Flash's Complaint indicates that there were any restrictions on his liberty after he was cited for disorderly conduct and released. (Doc. 1). Accordingly, Flash does not state a claim for malicious prosecution against Evans.

Furthermore, there is no indication that the criminal charges themselves restrained Flash's liberty after his arrest. In *Britton v. Maloney*, for example, the First Circuit found that there was no seizure because "[a]bsent any evidence that [the plaintiff] was arrested, detained, restricted in travel, or otherwise subject to a deprivation of his liberty before the charges against him were dismissed, the fact that he was given a date to appear in court is insufficient to establish a seizure within the meaning of the Fourth Amendment." 196 F.3d 24, 28–29 (1st Cir. 1999). Similarly, nothing in Flash's Complaint indicates that there were any restrictions on his liberty after he was cited for disorderly conduct and released. (Doc. 1). Accordingly, Evans's Motion should be granted as to Flash's malicious prosecution claim.

## V.    First Amendment

Evans also moves to dismiss Flash's First Amendment retaliation claim for failure to state a claim. To state a First Amendment retaliation claim, a plaintiff must plead that: (1) they were engaged in constitutionally protected activity; (2) the defendant's action caused them to suffer an injury that would chill a person of ordinary

19

firmness from continuing to engage in that activity; and (3) the defendant's adverse actions were substantially motivated against their exercise of constitutionally protected activity. *Rincon v. City of Laredo*, No. 24-40168, 2025 WL 603883, at *5 (5th Cir. Feb. 25, 2025); *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021). When the retaliatory action is an arrest, the plaintiff must also typically show that the arrest was without probable cause. *See, e.g., Nieves v. Bartlett*, 587 U.S. 391 (2019).[4]

As to the first element, Flash was engaged in a constitutionally protected activity—photographing the police. (Doc. 1 at 29). Flash pleads that Evans's retaliation occurred after he photographed police officers during a public meeting. *Id.* at 23. The Fifth Circuit has held that "a First Amendment right to record the police does exist . . . ." *Turner v. Lieutenant Driver*, 848 F.3d 678, 688 (5th Cir. 2017) (quoting *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011)).

Flash pled the second and third elements of his claim as well. As to the second element, a "retaliatory arrest is sufficiently chilling" to a person of ordinary firmness. *Nieves*, 587 U.S. at 397. The Fifth Circuit also requires a subjective showing "that *the plaintiffs' exercise of free speech has been curtailed.*" *Villarreal v. City of Laredo*, 44 F.4th 363, 373–74 (5th Cir. 2022) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)), *vacated on reh'g en banc on other grounds*, 94 F.4th 374 (5th Cir. 2024). Here curtailment can be inferred from the lack of any allegations that Flash returned to the County Courthouse or photographed the police after the retaliatory conduct occurred. (Doc. 1);

---

4. This element is not at issue here because, for the reasons described regarding Flash's false arrest claim, he has adequately pled an absence of probable cause.

*see Keenan*, 290 F.3d at 260 (finding curtailment requirement satisfied by plaintiff backing off from exposing unlawful practices in constable's office).

Third, close timing between the plaintiff engaging in the protected activity and facing the retaliatory action can be a sufficient basis for inferring retaliatory motive. *Lewis v. Panola County*, No. 22-60123, 2022 WL 17496048, at *2 (5th Cir. Dec. 8, 2022); *Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013). Flash indicates he was arrested immediately after trying to photograph Ruiloba, demonstrating temporal proximity. (Doc. 1 at 23). Accordingly, Flash sufficiently pled each of the elements of his First Amendment retaliation claim.

Should this Court find that Evans is entitled to qualified immunity, Flash also makes out a violation of a clearly established right. The right to film police officers without facing retaliation is clearly established. *Turner*, 848 F.3d at 690. And in *Biggers v. Massingill*, the Fifth Circuit found a clearly established violation of the First Amendment where the plaintiff was selectively removed from a county commissioners court meeting for their views. No. 23-11023, 2025 WL 429974 (5th Cir. Feb. 7, 2025). Accordingly—even if qualified immunity applies—Flash has pled sufficient facts to overcome it at this stage.

## VI.   42 U.S.C. § 1983 Conspiracy

Next, Evans moves to dismiss Flash's civil rights conspiracy claim. Flash alleges that each individual Defendant, including Evans, conspired to suppress his newsgathering and journalism through retaliation and prior restraint. (Doc. 1 at 36). The

21

undersigned finds Flash adequately pled the existence of a conspiracy to suppress his First Amendment rights involving Evans.

Conspiracy claims brought through § 1983 for deprivations of constitutional rights "are unique" in that the plaintiff must not only allege facts that (1) establish the existence of a conspiracy involving state action, but also (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019). A § 1983 conspiracy cannot exist in a vacuum; there must be a surviving constitutional claim for it to be actionable. *Id.* They thus "act as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act" that caused the constitutional deprivation. *Bevill v. Fletcher*, 26 F.4th 270, 283 (5th Cir. 2022).

Here, Flash has pled facts demonstrating Evans, a member of the conspiracy, deprived Flash of his rights under the First Amendment. Thus, all that is left to consider is whether Flash sufficiently pled the existence of a connected conspiracy involving state action. *See Morales v. Carrillo*, 625 F. Supp. 3d 587, 598 (W.D. Tex. 2022). To survive a motion to dismiss, a plaintiff's allegations must "raise[] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Bevill*, 26 F.4th at 284 (quoting *Twombly*, 550 U.S. at 557).

Evans argues Flash's claim fails because he failed to plead the specifics of the agreement such as "when and where" it was made and "who was present . . . ." (Doc. 17 at 12). Such specificity is unnecessary at this stage. The sufficiency of "a complaint's conspiracy claim does not turn on whether the plaintiff includes a 'conclusory

allegation of agreement[.]' It turns on whether the specific facts alleged raise a 'suggestion' of such an agreement." *Rudd v. City of Norton Shores*, 977 F.3d 503, 520 (6th Cir. 2020) (internal citation omitted) (quoting *Twombly*, 550 U.S. at 557). Thus, "a plaintiff's § 1983 conspiracy claim need not satisfy 'a probability requirement at the pleading stage; plausibility simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.'" *Bevill*, 26 F.4th at 284 (cleaned up) (quoting *Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013)).

The existence of an agreement is often "shown by circumstantial evidence, because 'conspirators rarely formulate their plans in ways susceptible of proof by direct evidence.'" *Morales*, 625 F. Supp. at 599 (quoting *Thomas v. New Orleans*, 687 F.2d 80, 83 (5th Cir. 1982)). "Conspiracy" often "conjures images of under-the-table handshakes and back-alley meetings under the cover of night[,]" but that is not how people conspire. *Bevill v. City of Quitman*, No. 4:19-CV-406, 2025 WL 2306849, at *22 (E.D. Tex. Aug. 11, 2025). "They do so over time, in text messages, over lunch meetings, and during phone calls." *Id.* Consequently, "there is rarely a smoking gun" or a "room where [the conspiracy] happened." *Id.* "[T]he determination of whether a conspiracy existed almost inevitably rests on the inferences that may fairly be drawn from the behavior of the alleged conspirators." *Imani v. City of Baton Rouge*, 614 F. Supp. 3d 306, 374 (M.D. La. 2022) (quoting *Mack v. Newton*, 737 F.2d 1343, 1350 (5th Cir. 1984)).

Flash's allegations need only "suggest a commitment to a common end" or that the "conspirators had a unity of purpose or a common design and understanding . . . ." *Id.* (quoting *Mack*, 737 F.2d at 1350). Flash has pled that the individual Defendants

23

conspired and agreed to use their state authority to suppress his journalism through retaliation and prior restraint. (Doc. 1 at 36). There is a demonstrated commitment to a common end here of suppressing Flash's First Amendment rights using state authority and enough facts to raise the suggestion of a preceding agreement.

Flash alleges a "coordinated, multi-agency effort to develop counterstrategies against Flash's journalism . . . ." *Id.* at 37. Seldomly do such sensational claims have support to back them up, but Flash provides facts to push this over the line from speculative to plausible. After Flash began reporting on the individual Defendants, he was the target of seven separate criminal investigations, none of which resulted in any formal charges. *Id.* at 19. County officials discussed playing copyright restricted music over public meetings to prevent Flash from monetizing his recordings; they also floated the idea of a policy by which journalists could be refused reporting access based on favorability of coverage. *Id.* at 37. Then—in an extrajudicial proceeding—Flash was banned from coming within 300 feet of any County building or employee. *Id.* at 20. After that ban was struck down, Flash was arrested for the same conduct which had led to the ban—attempting to record and cover a county commissioners court meeting that was open to the public. *Id.* at 22.

Throughout the conspiracy's duration, many of the parties alleged to have been involved made statements expressing their animus toward Flash and his journalism. Evans called him "crazy" and "not suitable for public settings." *Id.* at 25. Defendant Dennison called him a "spoiled toddler" and speculated that he could be carrying a concealed weapon. *Id.* at 12. Defendant Eisen described Flash's Big Bend Times as a

"megaphone" and said that Flash "brought it on himself" through his journalism. *Id.* at 8. Critically, Defendant Eisen also stated that the County's actions against Flash were "motivated by our coverage[,]" suggesting a collective response motivated by his First Amendment activity. *Id.* at 35.

Flash also pled links between the individual Defendants. Defendants Ruiloba and Giesbrecht arrested Flash under Defendant Evans's directions and with Defendant Lopez present. *Id.* at 9. Immediately prior to the arrest, Lopez had expressed disapproval toward Flash's photojournalism, telling Flash "it was interfering with his ability to listen to the meeting." *Id.* at 22. Later, Defendants Evans and Lopez jointly provided body camera footage to and participated in an interview with the anonymous anti-Flash smear website. *Id.* at 25–26; *see Quitman*, 2025 WL 2306849, at *18 (considering joint interviews as evidence of conspiratorial relationship).

Although none of these acts in isolation would be sufficient, a reasonable fact finder could look at the totality of the allegations here and find they demonstrate a "commitment to a common end" and not purely independent conduct. *Imani*, 614 F. Supp. at 374 (quoting *Mack*, 737 F.2d at 1350). Multiple coordinated strategies were deployed with the end goal of silencing Flash's journalism. Whether those strategies were undertaken pursuant to a common scheme or agreement is still an open question, but Flash has at least provided enough to meet the "minimum standard" necessary to survive a motion to dismiss. *Bevill*, 26 F.4th at 284; *Morales*, 625 F. Supp. at 605 ("[T]he Court expresses no opinion on the merits of Plaintiff's conspiracy claim; it

25

simply finds that the inference of conspiracy is not so tenuous that the Court" must dismiss it. (citation and internal quotations omitted)).

Flash has also provided enough to demonstrate Evans's individual participation. Plaintiffs bringing claims through § 1983 must show that each government-official was personally involved in the constitutional deprivation. *Cope v. Cogdill*, 3 F.4th 198, 207 n.6 (5th Cir. 2021). In the context of conspiracy claims, this showing can involve otherwise lawful acts because "lawful actions can be evidence of a conspiracy." *Morales*, 625 F. Supp. at 603–04. Evans imposed the extrajudicial ban on Flash and ordered his arrest for reporting on the June 27 county commissioners court meeting. (Doc. 1 at 8–9). Both actions contributed to the overarching conspiracy to retaliate against Flash for exercising his First Amendment rights and suppress his newsgathering. Accordingly, Evans's Motion should be denied as to Flash's civil rights conspiracy claim.[5]

## VII.    State Law Claims

Finally, Evans moves to dismiss Flash's state law claims against him pursuant to subsection (e) of Section 101.106 of the Texas Tort Claims Act ("TTCA"). Evans argues that Flash would have had to elect to sue either him or the County, but not both. (Doc. 17 at 13–14). Regardless of the validity of this argument, subsection (e) explicitly states that government employees "shall immediately be dismissed on the filing of a motion by the governmental unit." § 101.106(e). Therefore, this right is properly raised in the

---

5. Because the law is clearly established on Flash's underlying First Amendment retaliation claim, it would also be clearly established on his affiliated conspiracy claim should the Court find Evans is entitled to assert qualified immunity. "[W]hen a defendant faces conspiracy claims under § 1983, the qualified immunity analysis that applies to the underlying § 1983 claims resolves the qualified immunity analysis for the conspiracy." *Morales*, 625 F. Supp. at 607 (citing *Bevill*, 26 F.4th at 283).

County's Motion to Dismiss, but not Evans's. *Ibarra v. Harris County*, 243 F. App'x 830, 837 (5th Cir. 2007) (affirming lower court denying dismissal under subsection (e) because county "never filed a motion to dismiss" and "the defendant officers have no automatic right to dismissal"). Evans's Motion should therefore be denied as to Flash's state law claims.

### VIII.   Official Capacity Claims

Finally, Evans moves to dismiss all of Flash's claims against him in his official-capacity. (Doc. 17 at 15). Official capacity actions against government officials are duplicative when their employing governmental entity is also a defendant, because official-capacity actions are "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Courts dismiss official-capacity claims on this basis, even when the plaintiff seeks injunctive relief from specific defendants. *San Antonio Firefights' Ass'n, Loc. 624 v. City of San Antonio*, No. SA-18-CV-745-XR, 2018 WL 11148671, at *2 (W.D. Tex. Oct. 4, 2018) ("[T]he underlying claims against the official-capacity defendants and the City are the same, regardless of whether Plaintiff intends to ask for injunctive relief specific to the Mayor or City Attorney."); *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001). Flash's claims against Evans in his official capacity should therefore be dismissed, as the County is a defendant here.

CONCLUSION AND RECOMMENDATION

After due consideration, the undersigned **RECOMMENDS** that Evans's Motion be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 17). Evans's Motion should be granted as to Flash's Fourth Amendment malicious prosecution and official capacity

27

claims. These claims should be **DISMISSED WITHOUT PREJUDICE**. The Motion should be denied as to judicial immunity, legislative immunity, and qualified immunity, as well as Flash's First Amendment retaliation, Fourth Amendment false arrest, civil rights conspiracy, and state law claims, which should proceed.

SIGNED this 17th day of June, 2026.

_____
DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT**

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation **by certified mail, return receipt requested**. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).